1
2
3
4
5
6
7

O

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11    ANGELA MYERS-LEYVA,          ) Case No. EDCV 11-1636-OP
                                    )
12                   Plaintiff,     )
                                    )
13              v.                  ) MEMORANDUM OPINION AND
                                    ) ORDER
14    MICHAEL J. ASTRUE,            )
      Commissioner of Social       )
15    Security,                     )
                                    )
16                   Defendant.     )
      _____ )

17

18         The Court[1] now rules as follows with respect to the disputed issues listed

19   in the Joint Stipulation ("JS").[2]

20

21    _____

22         [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed
     before the United States Magistrate Judge in the current action.  (See ECF
23   Nos. 7, 9.)

24         [2] As the Court advised the parties in its Case Management Order, the
25   decision in this case is being made on the basis of the pleadings, the
     Administrative Record and the Joint Stipulation filed by the parties.  In
26   accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court
     has determined which party is entitled to judgment under the standards set
27   forth in 42 U.S.C. § 405(g).  (ECF No. 6 at 3.)
28

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the Administrative Law Judge ("ALJ") properly determined that Plaintiff has a non-severe mental impairment;

(2)     Whether the ALJ properly considered the opinion of the treating physician; and

(3)     Whether the ALJ provided a complete and accurate assessment of Plaintiff's residual functional capacity ("RFC").

(JS at 2-3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

2

**III.**

**DISCUSSION**

**A.    The ALJ's Decision.**

The ALJ found that Plaintiff has the severe impairments of musculoskeletal disorder of the back, and obesity.  (Administrative Record ("AR") at 12.)  The ALJ also found that Plaintiff's medically determinable mental impairment of affective disorder is non-severe as it does not cause more than minimal limitation on her ability to perform basic mental work activities. (Id. at 13.)

The ALJ found that Plaintiff was able to perform a full range of sedentary work, except with the option to alternate between sitting and standing for comfort throughout the workday, as needed.  (Id. at 15.)

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform any past relevant work.  Based on the testimony of the VE, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff would be able to perform the requirements of such work as telephone quotation clerk (Dictionary of Occupational Titles ("DOT") No. 237.367-046), parimutuel ticket checker (id. No. 219.587-010), and addresser (id. No. 209-587-010).  (AR at 22.)

**B.    The ALJ Properly Determined Plaintiff Had a Non-Severe Mental Impairment.**

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520, 416.920.  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).  A finding of a non-severe

3

impairment is appropriate only when the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Soc. Sec. Ruling 85-28; see also Yuckert, 482 U.S. at 154 n.12.

Here, the ALJ concluded that Plaintiff's affective disorder was non-severe as it did not cause more than minimal limitation in her ability to perform basic mental work activities. (AR at 13.)

Plaintiff contends that in arriving at this conclusion, the ALJ overlooked and failed to properly consider Plaintiff's August 30, 2010,[3] evaluation at the Inland Behavioral and Health Services, Inc. in which she was diagnosed with depressive disorder, not otherwise specified, and assessed a Global Assessment of Functioning ("GAF") score of 55.[4] (JS at 3 (citing AR at 476).) The mental status examination and Lethality Assessment administered at that time concluded that Plaintiff had poor insight, a sometimes fearful and anxious affect, rambling speech, and possible impaired remote memory. (AR at 476-81.) Plaintiff also contends the ALJ failed to properly consider the January 29, 2010, Mental Capacities evaluation conducted by Vinod K. Kaura, M.D., in which Dr. Kaura found Plaintiff had problems with social functioning and task completion due to her mental condition. (JS at 3 (citing AR at 358).) Plaintiff asserts that these assessments showed that her mental impairment more than

---

[3] Although Plaintiff states that this was an October 10, 2006, evaluation (see JS at 3), the report indicates the evaluation was conducted on August 30, 2010 (AR at 476).

[4] A GAF score 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders 34 (Am. Psychiatric Ass'n ed., 4th ed. 2000) ("DSM-IV").

minimally affect her ability to perform basic work activities. (<u>Id.</u> at 4.)  The Court does not agree.

### 1.    **<u>Inland Behavioral and Health Services Assessment.</u>**

The ALJ properly discounted the August 30, 2010, mental health evaluation. (AR at 13-14.)  He noted that Plaintiff testified she had first sought mental health treatment only one month prior to the hearing. (<u>Id.</u> at 13.)  He noted that although the report indicated findings of rambling speech, poor insight, some fearfulness, possibly impaired memory, and a GAF score of 55, the checkbox form included as part of the assessment also noted that Plaintiff's "affect was appropriate, she was cooperative and amicable, her thought content was organized, decision-making was adequate, and impulse control was adequate." (<u>Id.</u> (citing <u>id.</u> at 476-81.)  He also noted that although Plaintiff attended one additional counseling session (<u>see, e.g.</u>, <u>id.</u> at 481), no medication was prescribed, and there was "no indication her treatment was changed" (<u>id.</u>).  These are valid reasons for discounting these findings this assessment.  <u>See, e.g.</u>, <u>Smolen</u>, 80 F.3d at 1284 (ALJ may properly rely on unexplained or inadequately explained failure to seek treatment); <u>Johnson</u>, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been prescribed).

Additionally, Plaintiff's GAF score of 55 fails to establish that Plaintiff's impairment was severe.[5]  As a threshold matter, the Commissioner has no obligation to credit or even consider GAF scores in the disability determination.  <u>See</u> 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American

---

[5]  A GAF score 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  <u>DSM-IV</u> 34.

Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").  Here, Plaintiff's score is not sufficiently low that it raises any serious question about the ALJ's determination that Plaintiff's mental condition did not significantly limit her ability to work.

### 2.    Dr. Kaura's Mental Health Assessment.

The ALJ discounted Dr. Kaura's opinion for several reasons.  He noted that although Dr. Kaura indicated Plaintiff had limitations in social functioning and task completion, he provided no supporting details for this conclusion.  (AR at 14.)  This is a proper reason to discount Dr. Kaura's opinion.  See, e.g., Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (conclusory findings in the form of a checklist properly rejected); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected three doctors' evaluations because they were check-off reports that did not contain any explanation for the bases for their conclusions).  Moreover, although Plaintiff told Dr. Kaura she was depressed, she also stated she did not want medication.  (Id.)  The ALJ also noted that Dr. Kaura was not a mental health professional, and there was no indication that Dr. Kaura provided any mental health treatment to Plaintiff.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (regulations give more weight to opinions of specialist concerning matters relating to their speciality over that of nonspecialists); Smolen, 80 F.3d at 1285 (opinions of specialist about medical issues related to his area of specialization are given more weight than opinions of non-specialist).

In contrast, the ALJ properly gave great weight to the opinion of consultative examiner Harrell Reznick, Ph.D., a licensed psychologist, and K. Gregg, M.D., a reviewing psychologist.  (Id. at 13-15 (citing id. at 263-69, 343-

44.).)  As noted by the ALJ, although Dr. Reznick did not have the "benefit of hearing [Plaintiff's] testimony" about her depression, Plaintiff reported depression to Dr. Reznick.  (Id. at 13.)  Dr. Reznick found only a "mildly constricted mood and affect without evidence of psychosis, poor common sense judgment, and poor fund of knowledge."  (Id. at 14 (citation omitted).)  He also found, however, that she was "oriented in all dimensions, spoke clearly, understood instructions and questions without difficulty, did not appear hyperactive or distractible, and had adequate language abilities."  (Id. (citations omitted).)  Dr. Reznick concluded that Plaintiff could perform simple repetitive tasks with minimal supervision, and with appropriate persistence and pace, could understand, remember, and carry out at least two simple to moderately complex verbal instructions, could tolerate ordinary work pressure, interact satisfactorily with others, observe basic work and safety standards, and handle her own financial affairs independently.  (Id.)  The ALJ found that Dr. Reznick's opinion was supported by his own examination, and was consistent with Plaintiff's minimal treatment records.  (Id.)

Based on the foregoing, Plaintiff has not met her burden of showing a severe mental impairment.  20 C.F.R. §§ 404.1508, 416.908 (claimant must prove the existence of physical or mental impairment by providing medical evidence of signs, symptoms, and laboratory findings; claimant's own statements of symptoms alone will not suffice); Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (it is claimant's burden to make a prima facie showing of disability, until Step 5).  Accordingly, the Court finds that there was no error.

**C.    The ALJ Properly Considered and Discounted the Opinions of Dr. Kaura.**

Plaintiff contends the ALJ's reasons for discounting the opinions of Plaintiff's  treating physician, Dr. Kaura, regarding Plaintiff's mental condition, were insufficient.  Specifically, Plaintiff contends that the ALJ appeared to

7

reject Dr. Kaura's opinion "primarily based on the absence of supporting details and lack of evidence of mental health treatment." (JS at 7-8.) She also argues that even if the ALJ properly concluded Dr. Kaura's opinion was not supported by objective evidence, the ALJ still had a duty to recontact the doctor to obtain clarification and additional evidence. (Id. at 8.)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. Donnett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas, 278 F.3d at 956-57; McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

As previously discussed, the Court finds that the ALJ properly

discounted the opinions of Dr. Kaura because he did not provide supporting evidence for his checkbox opinions, and was not a mental health professional. In contrast, Dr. Reznick was a mental health professional who conducted his own evaluation of Plaintiff.  Plaintiff reported her depression to him, but after his mental status examination, although he found Plaintiff limited in some areas as discussed previously, Dr. Reznick did not diagnose Plaintiff with any mental disorders.  (AR at 14.)  Dr. Reznick's opinion was consistent with the record on the whole and therefore constituted substantial evidence to support the ALJ's finding of non-severity.[6]  See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.")

Moreover, the ALJ did not have a duty to recontact Dr. Kaura.  The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288); see also Crane, 76 F.3d at 255 (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288).  However, it is the plaintiff's burden to prove disability.  Baylis v. Barnhart, 427, F.3d 1211, 1217 (9th Cir.

---

[6]  In particular, the medical consultant's opinion was consistent with the opinion of an examining psychologist, who concluded, after performing a series of psychological tests, that Plaintiff had "no impairment that would interfere with his ability to complete a normal workday or workweek."  (AR at 183-88.)

1    2005) ("The claimant bears the burden of proving that she is disabled" (quoting

2    Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999))).

3            Based on the foregoing, the Court finds that the record before the ALJ

4    was neither ambiguous nor inadequate to allow for proper evaluation of the

5    evidence, and substantial evidence supported the ALJ's decision that Plaintiff

6    did not have a mental health impairment.  Accordingly, the ALJ had no duty to

7    further develop the record.

8    **D.    Whether the ALJ Properly Considered Plaintiff's RFC.**

9            Plaintiff contends that the ALJ omitted from Plaintiff's RFC the mental

10   limitations and impairments found by Dr. Kaura, without sufficient explanation.

11   (JS at 12.)  As with the prior issues, she contends the ALJ improperly rejected

12   Dr. Kaura's opinion "primarily based on the absence of supporting details and

13   lack of evidence of mental health treatment."  (Id. at 13.)  She also contends that

14   the ALJ should have recontacted the doctor if he felt the information provided

15   was inadequate.  (Id.)  Finally, she also appears to allege that the ALJ ignored

16   her testimony that she has problems reading and writing.  (Id.)

17           If a plaintiff has a severe impairment that does not meet or equal the

18   Listings, the ALJ will review the plaintiff's RFC.  20 C.F.R. § 404.1520(e).

19   The Court will affirm the ALJ's determination of the plaintiff's RFC if the ALJ

20   applied the proper legal standard, and his decision is supported by substantial

21   evidence.  Bayliss, 427 F.3d at 1217.  In making his RFC determination, the

22   ALJ may properly take into account those limitations for which there is record

23   support and that did not depend on the plaintiff's testimony where the ALJ

24   properly found the plaintiff's testimony not credible.  Id.

25           In this case, the ALJ based his RFC assessment on the evidence of

26   Plaintiff's functional capacity remaining after the exclusion of Plaintiff's

27   subjective complaints.  Plaintiff does not dispute the ALJ's credibility

28

determination.[7]  The Court finds that in addition to properly discounting Dr. Kaura's opinion, and crediting the opinion of Dr. Reznick, the ALJ also properly rejected Plaintiff's credibility.  The ALJ was not obligated to consider any alleged limitations that were rejected as not supported by the record in determining Plaintiff's RFC.  As a result, the ALJ appropriately excluded Plaintiff's mental health complaints, and alleged difficulties in reading and writing, from his RFC assessment.  As discussed, the ALJ had no duty to further develop the record.

Based on the foregoing, the Court finds that the ALJ properly assessed Plaintiff's mental impairment and RFC.  Thus, there was no error.

/ / /

/ / /

**IV.**

**ORDER**

---

[7]  The ALJ discounted Plaintiff's credibility based on a number of appropriate factors:  Plaintiff made conflicting statements about the length of time her granddaughter lived with her; despite her self-asserted limitations, Plaintiff acknowledged she and her husband share responsibility for her granddaughter's care; Plaintiff regularly drives to the doctor and to school; her allegations of back pain are not supported in the medical evidence and treatment history; none of the orthopedic specialists have recommended surgery or an assistive device; Plaintiff's statements regarding difficulty reading, writing, and comprehending are belied by the fact she took and passed a written driver license examination, and completed Microsoft User Specialist training; although she stopped working on June 14, 2007, because of severe back pain, there are no supporting medical records, and in a disability report, Plaintiff stated she "was let go from her job on that date"; there are indications that during her consultative orthopedic and psychological examinations that she made "sub-optimal" effort throughout the evaluations; and during a recent physical therapy session, she was reported to be unmotivated and non-participatory.  (AR at 17-18.)  These are legitimate reasons for discounting credibility.

11

1    Based on the foregoing, IT THEREFORE IS ORDERED that Judgment

2 be entered affirming the decision of the Commissioner, and dismissing this

3 action with prejudice.

4

5 DATED: June 7, 2012

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28